IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HARRY J. WILLIBY,

    Plaintiff,

v.

CITY OF OAKLAND, et al.,

    Defendants.

No. C-06-07385 EDL

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Harry J. Williby, who is proceeding pro se in this action, alleged violations of 42 U.S.C. § 1983 and various state laws against Defendants City of Oakland, Oakland Police Department, Officer C. Craig, and Chief Wayne Tucker based on two incidents: (1) Plaintiff alleges that he was attacked by a vicious dog and the City of Oakland did not follow through on its investigation of the attack; and (2) Plaintiff alleges that he was threatened by someone while dining at a McDonald's restaurant and asked the police to place that person under citizen's arrest, but the officer did not do so. Defendants have moved for summary judgment. Plaintiff did not file an opposition, but on February 20, 2008, the day after the briefing on the motion for summary judgment was complete, Plaintiff filed a Motion to Deny the Motion for Summary Judgment and a Request for Continuance Pursuant to Rule 56(f). Because this matter was appropriate for decision without oral argument, the Court vacated the March 4, 2008 hearing on Defendants' motion.

**Federal Rule of Civil Procedure 56(f)**

Plaintiff seeks a continuance pursuant to Rule 56(f) so he can conduct discovery before responding to this summary judgment motion. That Rule states:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f). The party opposing the summary judgment bears the burden of satisfying the requirements of Rule 56(f) by making a timely application which specifically identifies relevant evidence, where there is some basis for believing that the evidence sought actually exists, and shows that the evidence would prevent summary judgment. See Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1129 (9th Cir. 2004); California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998); Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991) (citing Hancock v. Montgomery Ward Long Term Disability Trust, 787 F.2d 1302, 1306, n. 1 (9th Cir. 1986)).

Plaintiff has not conducted any discovery in this case despite the Court's July 31, 2007 Case Management and Pretrial Order providing a discovery cutoff date of January 14, 2008. See Pfingston v. Ronan Engineering Co., 284 F.3d 999, 1005 (9th Cir. 2002) (failure to diligently conduct discovery justifies denial of Rule 56(f) motion). This is not a case in which the summary judgment motion was filed so early in the case that there was no time to take discovery; here, discovery was open for many months and this motion for summary judgment was brought after the discovery cutoff date. Cf. Burlington Northern & Santa Fe Ry. Co. v. The Assiniboine, 323 F.3d 767, 773 (9th Cir.2003) ("Where ... a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant Rule 56(f) motions fairly freely.").

Plaintiff's explanation that he was under the impression that his amended complaint would be reevaluated under the statute governing in forma pauperis applications and that discovery would be formally opened by the Court at that time is not persuasive. See Feb. 11, 2008 Order Denying Pl.'s Mot. to Strike. The Court discussed both the discovery cutoff dates and amendment of the complaint at the case management conference, and Plaintiff did not raise the issue of a discovery stay or a reevaluation of the amended complaint, which was permitted only to substitute the name of a police officer for a Doe Defendant. Moreover, Plaintiff's claim that he has been conducting

informal discovery through the Internet is inconsistent with his statement that he thought discovery needed to be formally opened by the Court through another scheduling order.

Substantively, Plaintiff's Rule 56(f) request also fails. Plaintiff's requested discovery is primarily focused on the homicide rate in Oakland, which he sees as connected to his argument in this case that police services and protection are denied to African-American males in Oakland. Plaintiff seeks to depose at least eleven people (some of whom appear to have no connection to this case), and has provided proposed requests for admission and requests for production of documents that appear to seek tangentially relevant information. See Pl.'s Ex. 2 (84 Requests for Admission) and Ex. 3 (thirteen Requests for Production). Plaintiff, however, has made no attempt to show any factual basis that such discovery would yield relevant evidence to defeat summary judgment. See Margolis v. Ryan, 140 F.3d 850, 854 (9th Cir. 1998) (stating that there was no basis or factual support for the affiant's assertions in Rule 56(f) affidavit, and that the affidavit was "based on nothing more than wild speculation."). Under the circumstances of this case, Plaintiff's Rule 56(f) request is denied.

**Facts**

Plaintiff submitted no evidence in his late-filed Motion to Deny Summary Judgment or otherwise in opposition to Defendants' Motion for Summary Judgment. In an effort to provide some context for this motion, the following allegations by Plaintiff are taken from the first amended complaint. Mere allegations without any competent evidentiary support, however, cannot defeat summary judgment.

**The vicious dog incident**

On June 13, 2005 at approximately 10:00 p.m., Plaintiff was chased down the 1800 block of 10th Avenue in Oakland by a vicious dog. See First Am. Compl. ¶ 10. Plaintiff attempted to shield himself from the attack by using his canvas attaché case that contained a laptop. See id. Plaintiff was forced to throw the attaché case at the dog and as a result, his laptop was destroyed. See id. At some point during the attack, a male in a white BMW drove into a residential driveway at 1806 10th Avenue, and the dog ceased its attack and followed the male into the house. See id. at ¶ 11.

On that same night, shortly after 10:00 p.m., Plaintiff contacted the City of Oakland police to

make a report. See First Am. Compl. ¶ 13. The police informed Plaintiff that Oakland Animal Control Services would contact Plaintiff the next day, on June 14, 2005. See id. Plaintiff did not hear from Animal Control, so he contacted the agency through its website. See id.

In April 2006, Plaintiff received a Notice of Informal Complaint Resolution about the incident. See First Am. Compl. ¶ 15. Plaintiff alleges that he did not speak with anyone at the Animal Control Service. See id. at ¶ 16. However, Plaintiff alleges that Mr. Davis, the Director of Animal Control, told Plaintiff that he would contact the dog owner and give Plaintiff the owner's name and true identity. See id. Plaintiff alleges that the City of Oakland, the Oakland Police Department and Animal Control refused to provide Plaintiff with police or animal services. See id.

**The McDonald's incident**

On December 1, 2005, at approximately 8:30 p.m., Plaintiff was dining at the McDonald's restaurant at 1330 Jackson Street in Oakland. See First Am. Compl. ¶ 19. An unknown person approached Plaintiff and attempted to sell Plaintiff a newspaper. See id. When Plaintiff declined to buy it, the person threatened to shoot and kill Plaintiff, and then left the restaurant. See id.

Plaintiff left the restaurant a few minutes later and found the unknown person at 14th Avenue and Broadway. See First Am. Compl. ¶ 20. Plaintiff also found a marked police car with an officer inside. See id. Plaintiff approached the officer, who he believes is Officer C. Craig, and requested that the officer make a citizen's arrest of the person. See id. Plaintiff gave the officer a physical description of the unknown person and then proceeded back to where the person was located at 14th and Broadway. See id. Plaintiff observed the officer make a u-turn in his car and drive eastbound, but the officer did not return to the location. See id. Plaintiff stood there, near the unknown person, for 20 minutes, until the person left 14th and Broadway. See id.

**Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477

4

U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. See id. The court may not weigh the evidence. See id. at 255. Rather, the nonmoving party's evidence must be believed and "all justifiable inferences must be drawn in [the nonmovant's] favor." United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citing Liberty Lobby, 477 U.S. at 255).

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party will bear the burden of proof at trial, the moving party's burden is discharged when it shows the court that there is an absence of evidence to support the nonmoving party's case. See id. at 325.

A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); Liberty Lobby, 477 U.S. at 250. The opposing party, however, need not produce evidence in a form that would be admissible at trial in order to avoid a summary judgment. See Celotex, 477 U.S. at 324. Nor must the opposing party show that the issue will be resolved conclusively in its favor. See Liberty Lobby, 477 U.S. at 248-49. All that is necessary is sufficient evidence supporting the asserted factual dispute and requiring a jury or judge to resolve the parties' differing versions of the truth at trial. See id.

**Discussion**

**Due Process**

Plaintiff alleges that Defendants are liable under § 1983 for depriving him of due process under the Fourteenth Amendment based the vicious dog incident and the McDonald's incident. Although it is unclear whether Plaintiff is alleging a violation of procedural or substantive due process, under either theory, he has not met his burden on summary judgment.

In order to prove a violation of either procedural or substantive due process under the Fourteenth Amendment, a plaintiff must show, inter alia, a deprivation of a cognizable liberty or

5

property interest protected by the Constitution. See Thornton v. City of St. Helena, 425 F.3d 1158, 1167 (9th Cir. 2005) (procedural due process); Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998) (substantive due process). Plaintiff appears to allege that he was denied due process when he was denied police services when his requests for assistance from the Animal Control Service and for Officer Craig to make a citizen's arrest were not carried out to his satisfaction.

Even if he was denied police services, Plaintiff cites no cases, and the Court can find none, supporting a due process violation. Under analogous circumstances, there is no property interest for purposes of due process in police enforcement of a restraining order. In Town of Castle Rock, Colorado v. Gonzales, 545 U.S. 748 (2005), the Supreme Court held that even if a Colorado state law created an entitlement to enforcement of a restraining order, that entitlement would not constitute a property interest for purposes of due process. There, the Court stated:

> Such a right [enforcement of restraining order] would not, of course, resemble any traditional conception of property. Although that alone does not disqualify it from due process protection, as Roth and its progeny show, the right to have a restraining order enforced does not "have some ascertainable monetary value," as even our "Roth-type property-as-entitlement" cases have implicitly required. [citation omitted]. Perhaps most radically, the alleged property interest here arises incidentally, not out of some new species of government benefit or service, but out of a function that government actors have always performed-to wit, arresting people who they have probable cause to believe have committed a criminal offense.

See Town of Castle Rock, 545 U.S. at 766-67. Similarly, here, even if Plaintiff had an entitlement to the enforcement of the laws governing the City's conduct in this case, that right does not necessarily constitute a property or liberty interest. Significantly, the Supreme Court concluded that: "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations." Id. at 768.

The only allegation that even remotely addresses deprivation of a property interest is the destruction of Plaintiff's laptop, which, as alleged in the first amended complaint, was entirely due to actions by the Plaintiff and the privately owned dog, before the city officials were even involved in this case. Plaintiff has made no showing that the government had any role in the deprivation of any property interest associated with Plaintiff's laptop. Plaintiff has not raised a triable issue of fact as to either procedural or substantive due process.

6

**Equal Protection**

Plaintiff's equal protection claim appears to be based on the allegations that he was denied police services of his choice. To state a § 1983 claim for violation of the Equal Protection Clause "'a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001 ) (citation omitted)). "'The first step in equal protection analysis is to identify the . . .classification of groups.'" Id. (quoting Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir.1995) (citation omitted)). The groups must be comprised of similarly situated persons so that the factor motivating the alleged discrimination can be identified. See id. An equal protection claim will not lie by "conflating all persons not injured into a preferred class receiving better treatment" than the plaintiff. See id. (quoting Joyce v. Mavromatis, 783 F.2d 56, 57 (6th Cir.1986)). Here, even assuming Plaintiff is a member of a protected group, there is no evidence of discriminatory intent. See Thornton, 425 F.3d at 1167 ("Mere indifference to the effects of a decision on a particular class does not give rise to an equal protection claim, [citation omitted], and conclusory statements of bias do not carry the nonmoving party's burden in opposition to a motion for summary judgment, [citation and footnote omitted].").

Plaintiff may be relying on the "class of one" theory for his equal protection claim. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (recognizing "class of one" may raise an Equal Protection claim). To prevail under that theory, a plaintiff must show that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Thornton, 425 F.3d at 1167. Here, there is no evidence that Plaintiff was treated any differently than anyone else, much less that he was *intentionally* treated differently. In addition, there is no evidence regarding the basis for Defendants' conduct, rational or otherwise. If anything, Defendants engaged in selective enforcement of its laws, which, by itself, does not make their conduct irrational. See Freeman, 68 F.3d at 1188 ("Selective enforcement of valid laws, without more, does not make the defendants' action irrational."). Plaintiff has failed to create a triable issue of fact as to his equal protection claim.

7

**Municipal Liability**

A municipal government can be held liable under § 1983 only if a plaintiff can demonstrate that a deprivation of a federal right occurred as a result of a "policy" of the local government's legislative body or of those local officials whose acts may fairly be said to be those of the municipality. See Monell v. Department of Social Serv., 436 U.S. 658 (1978). When execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983. Collins, 503 U.S. at 121 (quoting Monell, 436 U.S. 658 at 691, 694). Municipalities cannot be held liable under § 1983 for constitutional torts on a theory of respondeat superior, that is, solely because they employed tortfeasors. Id. at 694-95. A municipality may be held liable for an official policy or informal custom, (Monell, 436 U.S. 658 at 690-94), for acts or decisions of officials with final policy-making authority, (Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989)), or for consciously ratifying the conduct of another, (Gillette v. Delmore, 979 F.2d 1342, 1347 (9th Cir.1992)).

Plaintiff has failed to raise a triable issue of fact as to Monell liability. First, summary judgment is granted as to Plaintiff's due process and equal protection claims, so there is no underlying violation of a constitutional right to support Monell liability. Second, although Plaintiff alleges two incidents by the City, those incidents involved different agencies of the City more than six months apart. There is no evidence that the incidents were at all connected so as to constitute a City policy, or that the decisions made concerning those incidents were those of an official with final policy-making authority or who ratified the conduct.

**State law claims**

Plaintiff alleges state law claims against Defendants for negligent supervision and gross negligence. Defendants argue that they are entitled to summary judgment on these claims because there is no evidence that Plaintiff complied with the mandatory claim presentation requirements, because there is no evidence of negligence, because Defendants are entitled to immunity under state law and because there is no evidence of damages.

The Tort Claims Act requires that any civil complaint for money or damages first be

presented to and rejected by the pertinent public entity. See State v. Superior Court (Bodde), 32 Cal.4th 1234, 1237 (2004); Munoz v. California, 33 Cal.App.4th 1767, 1777 (1995). There is no evidence that Plaintiff complied with the claim presentment requirement, so summary judgment on the state law claims is proper.

Further, Plaintiff has failed to raise a triable issue of fact as to negligence. An action in negligence requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff. See Ann M. v. Pacific Plaza Shopping Center, 6 Cal.4th 666, 673 (1993). Here, Plaintiff has failed to allege facts giving rise to a police officer's duty. See Zelig v. County of Los Angeles, 27 Cal.4th 1112, 1128 (2002) ("More specifically, 'law enforcement officers, like other members of the public, generally do not have a legal duty to come to the aid of [another] person . . . .'" [citation omitted]). There is no evidence that any police officer in this case voluntarily assumed a duty with respect to Plaintiff. See id. ("Liability may be imposed if an officer voluntarily assumes a duty to provide a particular level of protection, and then fails to do so [citations omitted], or if an officer undertakes affirmative acts that increase the risk of harm to the plaintiff."). To the extent that a duty may be imposed by statute, the only statute identified by Plaintiff in the complaint is Penal Code § 837 regarding citizen arrests, which expressly gives a police officer discretion in making a citizen arrest. See Meyers v. Redwood City, 400 F.3d 765, 772 (9th Cir. 2005) ("California law gives the officer the choice of making the citizen's arrest or not . . . ."). Plaintiff has not pointed to any statutory duty that was breached in this case.

In addition, there is no evidence of damages resulting from the alleged negligence. Indeed, damages flowing from the failure to investigate the vicious dog incident and from the failure to make a citizen arrest are not apparent. Moreover, while Plaintiff alleges damage to his laptop caused when he threw it at the vicious dog, there is no evidence that the damage was caused by Defendants' alleged conduct, which occurred later.

Even if Plaintiff's state law claims were to survive these flaws, it appears that some state law immunities may apply. See, e.g., Cal. Gov't Code § 846 ("Neither a public entity nor a public employee is liable for an injury caused by the failure to make an arrest or the failure to retain an

arrested person in custody."); Garcia v. Superior Court, 50 Cal.3d 728, 743, n.4 (1990) (citing § 846 as an absolute statutory immunity for the failure to arrest); see also, e.g., Cal. Gov't Code § 815.2 ("Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."). However, the Court need not reach the merits of the immunities raised by Defendants.

**Individual liability of Chief Tucker**

To the extent that Chief Tucker is sued in his official capacity for the federal claims, that is actually a claim against the City, for which Defendants are entitled to judgment. See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (official capacity suit is to be treated as suit against the entity). There are no allegations in the complaint that Chief Tucker did anything in his individual capacity with respect to the two incidents, so he is entitled to judgment to the extent that Plaintiff has sued him in his individual capacity on federal claims. See Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) ("Supervisory liability is imposed against a supervisory official in his individual capacity for his 'own culpable action or inaction in the training, supervision, or control of his subordinates,' [citation omitted]; for his 'acquiesce[nce] in the constitutional deprivations of which [the] complaint is made,'" [citation omitted]; or for conduct that showed a 'reckless or callous indifference to the rights of others.'" [citation omitted]).

Further, there is no basis in the record for liability against Chief Tucker for the state law claims. Plaintiff alleges that Chief Tucker has been delegated "the principal responsibility for the actual gathering of information, conducting investigations, providing public safety and effecting citizen's arrests" and that therefore, Chief Tucker is liable in negligence. See First Am. Compl. ¶¶ 41, 42. To the extent that these allegations go to vicarious liability, that claim fails because there is no evidence that Chief Tucker had any personal involvement in the incidents at issue in this case. See Oppenheimer v. City of Los Angeles, 104 Cal.App.2d 545, 549 (1951) ("A chief of police is not liable in damages for the unlawful acts and omissions of the subordinates of the department unless he has directed such acts or personally cooperated in the alleged false imprisonment.")

//
//

**Conclusion**

Accordingly, Defendants' Motion for Summary Judgment is granted.

**IT IS SO ORDERED.**

Dated: March 12, 2008

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge